United States District Court
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8  RONIE RICHIE,                          No. C-13-2693 EMC
9           Plaintiff,
                                          ORDER GRANTING IN PART AND
10     v.                                 DENYING IN PART PLAINTIFF'S
                                          MOTION FOR CLASS
11  BLUE SHIELD OF CALIFORNIA,            CERTIFICATION
12          Defendant.                    (Docket No. 27)
   _____/
13
14
15              I.    INTRODUCTION
16         Pending before the Court is Plaintiff Ronie Richie's motion for class certification.  Plaintiff
17  seeks to conditionally certify her FLSA claims alleging that Blue Shield failed to pay telecommuting
18  claims processors for "off-the-clock" work.  The alleged "off-the-clock" work was done as a result
19  of Blue Shield (1) requiring the telecommuting claims processors to come into an office once a
20  month for meetings without paying the telecommuters for their travel time and (2) requiring
21  telecommuters to meet 125% of the normal production goals, effectively requiring them to work
22  beyond an 8 hour shift.  Plaintiff also seeks to certify under Rule 23 California state claims alleging
23  that Blue Shield failed to reimburse the telecommuters for necessary business expenses –
24  specifically costs associated with maintaining a phone in their home (as required by Blue Shield
25  policy), mileage expenses for traveling to a Blue Shield office for required meetings, and various
26  "home office expenses.  For the following reasons, Plaintiff's certification motion will be
27  GRANTED in part and DENIED in part.
28

United States District Court
For the Northern District of California

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant Blue Shield of California ("Blue Shield") is a not-for-profit health insurance plan that has over 3 million members.  Declaration of James M. Treglio ("Treglio Decl."), Ex. 6 (Docket No. 27-3).  Plaintiff Ronie Richie worked for Blue Shield as a commercial claims processor from October 2001 through November 2011.  First Amended Complaint ("FAC")  ¶ 11.  Commercial Claims Processors are responsible for processing claims that were unable to be "auto-adjudicated" without human intervention for some reason.  Deposition of Lauri Satterthwaite ("Satterthwaite Depo.") at 17:2-15 (Docket No. 27-3, Ex. 1).  Such claims are referred to claims processors based upon that processors' skill level and expertise.  *Id.*  Approximately 40% of Blue Shield's claims processors telecommute.  *Id.* at 25:24.  Plaintiff seeks to represent a class of these telecommuters, alleging that Blue Shield has failed to pay them required overtime and reimbursement for necessary work related expenses.

A.   Overview of Telecommuter Requirements

A claims processor must meet certain requirements before being offered the opportunity to telecommute.  First, the claims processor must have worked at an on-site location for at least a year. Blue Shield of California Telework Handbook ("Telework Handbook") at 3 (Treglio Decl., Ex. 3). Second, the processor must be able to "set aside an area of the alternate work location to be used exclusively as an office" and be able to "limit access and safeguard any member [personal health information] from those who do not have the need or right to know."  *Id.*  Third, the alternate work location must have access to high-speed internet and telephone lines.  *Id.*  Fourth, the process must be able to "come into work as needed, for training, meetings, or any other reason, which could encompass up to one or more days in any week."  *Id.*  Claims processors who meet these requirements are *permitted* to telecommute, but they are not required to do so.  "Claims processors who are given the option to telecommute are not required to do so and retain a primary site to which they are assigned . . . ."  Declaration of Lauri Satterthwaite ("Satterthwaite Decl.") ¶ 2 (Docket No. 31-2).  If a claims processor opts to telecommute, he or she must enter into a telecommuting agreement.

United States District Court

For the Northern District of California

1   Blue Shield has placed into the record two versions of a "Telecommuting Application and

2   Agreement" signed by Plaintiff – one in 2008 and one in 2011.  The 2008 document is highly

3   general, and simply provides that Plaintiff read and understood the "Telecommuting Operational

4   Guidelines and Requirements," that telecommuting was voluntary, and that Plaintiff had the

5   responsibility for "establishing specific scheduled telecommuting work hours, setting and achieving

6   clear goals for telecommuting work hours, and employing appropriate telecommuting security

7   measures."  Declaration of Sharon B. Bauman ("Bauman Decl."), Ex. C (Docket No. 31-1).  Under

8   "Description of Telecommuting Agreement," the 2008 agreement provided:  "Full Time

9   Telecommuter: Monday through Friday – 40 hours per week."  *Id.*  The 2011 document is identical,

10  except that under "Description of Telecommuting Agreement," it provides the following regarding

11  the expectations of employees and the employees' entitlement to reimbursement:

12      The claims employee must maintain 125% of productivity standard as
13      a telecommuter, while meeting all other performance expectations.

14      The employee is responsible for providing necessary furniture and
        work space, which must meet OSHA requirements for safety and
15      ergonomics, have locking drawers, and meet HIPPA
        requirements . . . .

16      Any charges incurred by the employee for work-related telephone
17      calls and DSL service will be reimbursed by the Company.

18      The employee is able to work between the hours of 6:00 AM - 6:00
        PM.

19      The employee agrees to be available by telephone, email and office
20      communicator during the agreed upon business hours.

21      The employee agrees to be available at least once per month or as
        required by management, to report to a Company business location to
22      attend meetings, training, and for other business related purposes.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

3

Bauman Decl. Ex. D.[1]  The Telecommuting Guidelines maintained on Blue Shield's HR website further provide:

> The decision on what, if any, equipment will be provided by the Company is dependent on the job tasks to be performed while telecommuting as well as any and all budgetary on the job tasks to be performed while telecommuting as well as any and all budgetary considerations.  The Company may, at its discretion, provide some or all of the following:
>
> • A Company-issued desktop or laptop computer with the appropriate software and technological tools
>
> • Necessary office materials
>
> • Reimbursement for internet access may be provided, depending on the number of hours of telecommuting
>
> • Any physical renovations to facilitate telecommuting will be the responsibility of the employee

Treglio Decl., Ex. 4.

B.   **Overview of Plaintiff's Claims**

Plaintiff's claims fall into two broad categories.  First, Plaintiff asserts that the requirement that telecommuters maintain a 125% productivity standard effectively requires telecommuting claims processors to work off the clock, resulting in unpaid overtime.  Second, Plaintiff claims that telecommuting claims processors are not reimbursed for required travel to and from Blue Shield locations and have not been reimbursed for various incurred business expenses.

   1.   **125% Productivity Standard and Effect on Working Hours**

Plaintiff argues that Blue Shield's policies and practices effectively compel telecommuting claims processors to work off the clock without receiving overtime compensation as required by the FLSA.

---

[1] Plaintiff has placed into the record an unexecuted document entitled "Blue Shield Telecommuting Agreement" that appears to be an appendix to Blue Shield's Telework Handbook. Tregio Decl., Ex. 2.  This document is far longer and more detailed than those executed by the Plaintiff.  Oddly, this unexecuted document provides that Blue Shield will provide a desk, chair, filing cabinet, etc, which appears to be in tension with the 2008 agreement stating that the employee was "responsible for providing necessary furniture."  The relationship to this document to the actual executed agreements is not clear.  Defendant did not object to this document.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

As detailed above, the Telecommuting Application and Agreement provides that telecommuting employees are required to meet a 125% production standard.  According to Lauri Satterthwaite, Blue Shield's Director of Commercial Claims & EDI, Blue Shield employs a "varying productivity standard, which is a volume of claims per hour or per day based upon each individual's unique process in which they handle."  Satterthwaite Depo. at 65:10-20.  She explains that

> Production goals are not set based on the simple averaging of performance done by the claims processors in a given period, but are instead based on time studies that analyze the length of time required to complete each and every different type of claim that a claims processor may be required to process.  Time per claim varies greatly based on the type of claim, and production goals for more complex claims require less claims per hour than less complex claims.

Satterthwaite Decl.  ¶ 4.  She states production goals have both increased and decreased as a result of these time studies.  *Id.*[2]  Blue Cross states that a 125% production goal is applied to telecommuters "because there are less distractions at home than there are for a claims processor working in the office."  Declaration of Kari Rivera ("Rivera Decl.") ¶ 4 (Docket No. 31-3).

If a telecommuting claims processor fails to meet his or her production goals over an extended period of time, supervisor intervention occurs on a graduated level: web-based training, then in-office training, followed by a verbal warning with a deadline for improvement, and then finally the employee is placed on a Performance Improvement Plan that sets specific targets that must be met for the employee to remain on telecommuting status.  *Id.*  ¶ 5.  Termination is possible if the employee continues to chronically fail to meet production goals ¶ 7.

Plaintiff states in her declaration that during her time as a telecommuting claims processor, her production goals were "periodically increased," requiring her to do more work in order to meet those goals.  Declaration of Ronnie Richie ("Richie Decl.")  ¶ 10 (Docket No. 27-4).  Because of this, and given the fact that "some claims required more work than others, and because some work did not count toward the production target, I often felt compelled to work off the clock in order to achieve the level of productivity required."  *Id.*  Plaintiff states in her declaration that she frequently

---

[2] Plaintiff disputes this, claiming that the "time studies" Blue Shield reference were implemented *after* Plaintiff filed her lawsuit.  Reply Br. at 2, n.1.  Plaintiff, however, cites nothing in the record to support this statement.  Plaintiff contends that at the relevant time, the production goals were a "one way ratchet" and were ever increasing.

heard other telecommuters "discuss not being able to meet their production target within their eight-hour shift" and, because they "feared losing their jobs," they "often worked through lunch or breaks in order to meet their production targets." *Id.* ¶ 12. Plaintiff also contends that such "off the clock" work was facilitated by Blue Shield's policy of providing telecommuting workers with 24 hour access to computer program needed to complete their work without that worker needing to "clock in." Pl. Class Cert. Br. at 9; Satterthwaite Depo. at 60:3-16; Deposition of Jane Marenco ("Marenco Depo.) at 36:8-21 (Docket No. 35-1). Finally, Plaintiff contends that Blue Shield required all overtime to be pre-approved and, therefore, this off-the-clock work was never compensated. Richie Decl. ¶ 12.

According to Blue Shield, claims processors have been repeatedly instructed not to work off-the-clock. Rivera Decl. ¶ 8; Satterthwaite Decl. ¶ 8; Declaration of Jane Marenco ("Marenco Decl.") ¶ 6 (Docket No. 31-4). It contends that working off-the-clock "causes problems with managements' ability to evaluate whether the production goals are appropriate and fair." Rivera Decl. ¶ 8. Blue Shield acknowledges "rare instances" of employee's engaged in off-the-clock work. Satterthwaite Decl. ¶ 8. When this has occurred, Blue Cross contends that supervisors have contacted the employee to determine what occurred, ensured that the employee received compensation, and reprimanded that employee for violating company policy. Satterthwaite Decl. ¶ 8; Marenco Decl. ¶ 4. Examples of the allegedly "rare" and "minor" instances of off-the-clock work are employees signing onto their computers a few minutes before they formally clocked in so as to be ready to start their shift. Marenco Decl. ¶ 4.

      2.     Unreimbursed Business Expenses

Plaintiff alleges that Blue Shield has a practice of failing to reimburse various business expenses. In the FAC, Plaintiff alleges that Blue Shield required her and the other telecommuting claims processors to "purchase office supplies such as phone and internet service, and to drive to monthly regional meetings." FAC ¶ 17. Thus, Plaintiff asserts that Plaintiff and the claims processors have "regularly incurred mileage expenses as a result of the requirement to travel, and other home office expenses." *Id.* ¶ 18.

United States District Court

For the Northern District of California

In the motion for class certification, Plaintiff has pointed to three categories of unreimbursed expenses: (1) telephone and internet expenses; (2) travel expenses to and from a Blue Shield site; and (3) the costs associated with having a home office, such as the portion of her rent/mortgage, utilities, insurance, and depreciation.  As to the first category and as detailed above, Plaintiff's telecommuting agreement provided that Blue Shield would reimburse for charges associated with work-related phone calls and DSL service.  Bauman Decl, Ex. D; *see also* Satterthwaite Depo. at 42:11-15 (stating that telecommuters are reimbursed for work-related telephone charges).  In her declaration, however, Plaintiff states that she was "never told that Blue Shield would cover my telephone expenses" and thus never submitted them for reimbursement.  Richie Decl. ¶ 8.  It is not clear that Plaintiff ever incurred extra telephone charges as a result of her work – in her declaration she stated that, on average, she would need "to call a Blue Shield office twice a month to participate in meetings, to request technical support, or to follow up on a claim."  *Id.*  In her deposition, she could not recall whether the number she had to call was long distance or not.  Deposition of Ronie Richie ("Richie Depo.') at 69:7-17 (Docket No. 31-1).[3]  As noted in footnote 8 below, Plaintiff does not seek recovery of internet expenses.

Second, Plaintiff indicates that she was required "to attend on-site meetings and trainings on average of once a month" and that these required her to drive from her home to Blue Shield's El Dorado Hills office.  *Id.* ¶ 11.  Blue Shield's policy was to not provide for travel time or mileage reimbursements.  *Id.*  Plaintiff's telecommuting agreement required her to "be available at least once per month" to report to a Blue Shield business location.  Bauman Decl., Ex. D.[4]  Blue Shield claims that telecommuters are not reimbursed for such expenses "when such travel takes place before clocking in and after clocking out, as such travel is part of the employee's normal commute."  Satterthwaite Decl. ¶ 3.  It further states that even though telecommuters work from home, the Blue Shield office remains their "primary office."  *Id.* ¶ 2.  Starting in 2011, Blue Shield prohibited

---

[3] Both Plaintiff's home office and her primary Blue Shield office were both located in El Dorado Hills, California.  Richie Depo. at 89:10-23.

[4] Blue Cross personnel have indicated in their declarations that telecommuters are no longer required to come into an office for team meetings.  Rivera Decl. ¶ 9.

United States District Court
For the Northern District of California

telecommuters from traveling to and from their primary work site *during* the work day (i.e., after clocking in or before clocking out). *Id.* ¶ 3; Treglio Decl., Ex. 9 ("Blue Shield of California's practice is that employees will travel to their designated 'primary site' prior to the state of their work day and travel home at the conclusion of their work day.  Under these circumstances, the travel time to and from the employee's designated . . . 'primary site' is considered the employee's normal commute and is not considered work time.").  Further, in December 2011, Blue Shield reimbursed employees for any past mileage and travel time they may have incurred during the work day over the previous three years. *Id.*  Plaintiff was terminated from Blue Shield in 2011, and she has stated that she did not receive any reimbursement for her mileage expenses.  Riche Decl. ¶ 13.

The third category – "costs associated with home offices" – is highly general.  Plaintiff simply declares that she has "never received any reimbursement for expenses associated with having a home office, including rent, utilities, insurance, and depreciation." *Id.*  Further, in her deposition, Plaintiff stated that while Blue Shield originally provided office supplies such as stationary, pens, post-it notes, highlighters, etc., over the last two years of her employment, she had to pay for those supplies out of her own pocket.  Deposition of Ronie Richie at 90 (Bauman Decl., Ex. E, Docket No. 31-1).  She stated this occurred because the supply room to which she had access at the Blue Shield office no longer stocked these basic office supplies. *Id.* at 95.

In support of her claim that Blue Shield failed to provide reimbursement for the expenses occurred with the "physical" expenses of having a home office (increased utilities, percentage of mortgage/rent, etc.), Plaintiff has supplied a declaration by a Certified Public Accountant. Declaration of William H. Green ("Green Decl.") (Docket No. 27-5).  Mr. Green opines that Plaintiffs, and other full time Blue Shield telecommuters, would qualify for the Internal Revenue Service's "home office deduction." *Id.* ¶ 9.  He states that in determining the amount of the home office deduction, the IRS estimates that a home office costs $5 per square foot for that portion of the house sued for home office purposes – including the portion of rent, utilities, and insurance. *Id.* ¶¶ 6, 7.  Thus, to arrive at the amount of reimbursement to which each putative class member is entitled, Mr. Green suggests using this $5 per square foot figure and subtracting any telephone/internet reimbursement the class member received. *Id.* ¶ 10.

United States District Court

For the Northern District of California

### III.   DISCUSSION

A.   Plaintiff's Motion for Conditional Class Certification Under the FLSA

Plaintiff's FLSA claim is based on Blue Shield's alleged failure to pay Plaintiff and other telecommuting claims processors overtime compensation for off-the-clock hours they were forced to work by Blue Shield's practices detailed above.  *See* FAC ¶ 26.  Specifically, Plaintiff alleges that Blue Shield failed to pay Plaintiff and other claims processors overtime that was worked as a result of (1) telecommuting claims processors having to work through breaks as a result of Blue Shield's 125% productivity goals; and/or (2) telecommuting claims processors spending time during the day to drive into a Blue Shield office for mandatory monthly meetings.  Plaintiff seeks to conditionally certify a class action under section 16(b) of the FLSA on behalf of "all persons who are, or have been, employed by Defendant Blue Shield of California in [sic] State of California as a 'Claims Processor' who worked from home, or 'telecommuted' within the applicable statutory periods."  Docket No. 27-7.

1.   Legal Standard for Class Certification Under 29 U.S.C. § 216(b)

Section 16(b) of the FLSA authorizes collective actions brought to remedy violations for, among other things, an employer's failure to pay overtime compensation.  Specifically, the section provides in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Under this provision, "'to maintain a collective action under the FLSA a plaintiff must demonstrate that the putative collective action members are similarly situated.'"  *Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 836-37 (N.D. Cal. 2010) (quoting *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010)).  Neither the statute nor the Ninth Circuit has

**United States District Court**

For the Northern District of California

1   defined when employees are "similarly situated."  A majority of district courts (and a number of

2   circuit courts), however, adopt a two-step approach for determining whether putative FLSA class

3   members are "similarly situated."  *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D.

4   Cal. 2007); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The

5   two-tiered approach to certification of § 216(b) opt-in classes described above appears to be an

6   effective tool for district courts to use in managing these often complex cases, and we suggest that

7   district courts in this circuit adopt it in future cases."); *Thiessen v. Gen. Elec. Capital Corp.*, 267

8   F.3d 1095, 1102-03 (10th Cir. 2001).

9          Under the first step, the court determines whether the proposed class should be conditionally

10   certified for the sole purpose of sending out notice of the proposed action to the potential class

11   members.  *See Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *3 (C.D.

12   Cal. May 15, 2014); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) ("The

13   sole consequence of conditional certification is the sending of court-approved written notice to

14   employee . . . .").  At this preliminary notice stage, "courts require little more than substantial

15   allegations, supported by declarations or discovery, that 'the putative class members were together

16   the victims of a single decision, policy, or plan.'"  *Benedict v. Hewlett-Packard Co.*, No. C13-0119-

17   LHK, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014).  What this requires is the plaintiff to show

18   that some "identifiable factual or legal nexus binds together the various claims of the class members

19   in a way that hearing the claims together promotes judicial efficiency and comports with the broad

20   remedial policies underlying the FLSA."  *Russell v. Wells Fargo Co.*, No. C07-3993 CW, 2008 WL

21   4104212, at *5 (N.D. Cal. Sept. 3, 2008).  In making this determination, "'courts usually rely only

22   on the pleadings and any affidavits that have been submitted.'"  *Benedict*, 2014 WL 487135, at *5

23   (quoting *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004)).

24          This first step is a "lenient one that typically results in certification."  *Benedict*, 2014 WL

25   487135, at *5; *see also Lillehagen*, 2014 WL 2009031, at *3 ("[D]istrict courts apply a lenient

26   standard for certification at this stage, which typically results in certification.").  "'The requisite

27   showing of similarity of claims under the FLSA is considerably less stringent than the requisite

28   showing under Rule 23 of the Federal Rules of Civil Procedure."  *Nen Thio v. Genji, LLC*, — F.

Supp. 2d — , 2014 WL 3883289, at *11 (N.D. Cal. Aug. 7, 2014) (quoting *Hill v. RL Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010)).  Plaintiffs do not need to conclusively establish that a collective action is proper, because a defendant will be free to revisit the issue at the close of discovery.  *Benedict*, 2014 WL 587135, at *5.  Further, the Court is not to consider the substantive merits of plaintiff's FLSA claim.  *Centurioni v. City & County of San Francisco*, No. C07-01016 JSW, 2008 WL 295096, at *2 (N.D. Cal. Feb. 1, 2008); *see also Ayers v. SGS Control Servs., Inc.*, No. 03Civ.9078(RMB)(RLE), 2004 WL 2978296 (S.D.N.Y. Dec. 21, 2004) ("Evaluation of the merits of plaintiffs' claims is unnecessary to determine whether notice is appropriate to the defined similarly situated class.").

At the "second step of the two-step inquiry, 'the party opposing the certification may move to decertify the class once discovery is complete.'"  *Benedict*, 2014 WL 587135, at *6 (quoting *Adams*, 242 F.R.D. at 536).  Thus, this step occurs after the conditional class has received notice and discovery has been completed.  *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).  In addressing the defendant's motion to decertify, the court must make factual determinations regarding the "propriety and scope" of the class, and must consider three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.  *Id.*  The court applies a stricter standard at this step "because there is much more information available, 'which makes a factual determination possible.'"  *Vector Marketing*, 716 F. Supp. 2d at 837-38 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009)); *see also Labrie v. UPS Supply Chain Solutions, Inc.*, No. C08-3182 PJH, 2009 WL 723559, at *4 (N.D. Cal. Mar. 18, 2009) (noting that at the second step, the "court engages in a more stringent inquiry into the propriety and scope of the collective action" because "discovery is complete and the case is ready to be tried.").[5]

_____

[5] Even with this stricter standard, courts have noted that the second step analysis is still different to, and easier to satisfy, than the Rule 23 class certification requirements.  *See Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).

2.      The Court Declines to Bypass the First Step of the FLSA Certification Analysis

Blue Shield argues that the Court should bypass the lenient first step and proceed straight to the more searching inquiry under step two.  It argues that substantial discovery has taken place in this action and that there are sufficient facts before the Court to allow it to conduct the more rigorous step two analysis.  Blue Shield asserts that Phase I discovery has been ongoing for 11 months, with Plaintiff engaging in written discovery, filing document requests, and taking two depositions. Bauman Decl. ¶ 9.[6]

Courts have divided as to whether the first stage should be bypassed where substantial discovery has occurred.  "Where substantial discovery has been completed, some Courts have skipped the first-step analysis and proceeded directly to the second step."  *Smith v. T-Mobile USA, Inc.*, No. CV 05-5274 ABC (SSx), 2007 WL 2385131, at *4 (C.D. Cal. Aug. 15, 2007).  For example, in *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008), the court found it was not at the typical first-step "notice stage" because more than thirty employees of defendant Tyson Foods, Inc. had submitted declarations on behalf of Tyson.  *Id.* at 894.  Similarly, in *Smith v. T-Mobile, Inc.*, the district court applied the more stringent second-step analysis first, because the plaintiff had contacted 10% of the prospective class (totaling 1500 people) and presented 33 declarations, which the court found was a "fair sampling of the claims that [the] action involved."  *Smith*, 2007 WL 2385131, at *4.  Thus, the court found that providing notice to the rest of the class would not shed additional light on the class certification issues – particularly in light of the fact that the plaintiff had conducted company-wide discovery directed at determining if there was a company-wide policy or practice of FLSA violations.  *Id.*

On the other hand, a number of courts have refused to bypass the first notice step, even where substantial discovery had taken place.  The *Leuthold* decision is emblematic of the reasoning applied by these courts.  There, defendants had argued that the more stringent second step test should apply because "discovery [was] drawing to a close and that the court [had] enough evidence

_____

[6] At the October 10, 2013 case management conference, the Court ordered that "[p]arties may proceed with Phase I discovery related to class certification and may proceed with depositions and written discovery in conformance with the Federal Rules of Civil Procedure."  Docket No. 19.

before it to make a factual determination." *Leuthold*, 224 F.R.D. at 467. The court noted that while

the parties had "filed an impressive pile of declarations and deposition excerpts, it is unclear to the

court whether a complete factual record has been developed and presented to the court." *Id.* at 468.

Further, the court noted that "although some of the proposed class members are clearly aware of the

lawsuit, no formal solicitation appears to have taken place yet. Without some sort of formal

solicitation, it remains unclear how many of the proposed class members may want to participate in

the suit." *Id.* The court concluded:

> [B]eginning with tier one of the analysis is the most equitable means
> of proceeding. As noted above, should the court bypass tier one
> entirely, some potential plaintiffs might not become aware of the
> lawsuit and would not have an opportunity to join the suit. And
> should the court proceed to tier two on an unsettled factual record, the
> court might be deprived of crucial facts that would support plaintiffs'
> arguments for class treatment. The potential prejudice to plaintiffs of
> bypassing tier one thus is significant. On the other hand, the
> consequences to defendants of beginning with tier one are not unduly
> burdensome. Should the court conditionally certify the class,
> defendants will be free to move for decertification once the factual
> record has been finalized and the time period for opting in has expired.

*Id.*; *see also Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 366-67 (D. Me. 2010) ("The

prejudice to Prescott of skipping the notice stage could be significant, while prejudice to Prudential

is minimal since it is able to move for decertification at the close of discovery.").

The Court concludes that it would be improper to bypass the first "notice" step of the FLSA

certification process. As in *Leuthold*, the parties here have engaged in extensive discovery, but, at

the same time, it is unclear whether a complete factual record has been developed. It is unclear the

extent to which Blue Shield's telecommuting claims processors may want to participate in the trial.

Increased involvement by putative class members may affect the factual inquiry the Court would

need to engage in at the second step. This is particularly the case given the fact that Plaintiff's

FLSA claim relies on the presence of an alleged unofficial "practice" of requiring telecommuting

claims processors to work off-the-clock in conflict with Blue Shield's formal policy prohibiting off-

the-clock work. Accordingly, the Court declines to skip straight to the more rigorous second step,

but rather will consider whether to conditionally certify Plaintiff's putative FLSA class under the

more lenient "notice" standard.

United States District Court

For the Northern District of California

3. **Plaintiff's Motion for Conditional Class Certification of an FLSA Class Will be Granted-in-Part and Denied-in-Part**

As stated above, the merits of Plaintiff's off-the-clock FLSA claims are not relevant for determining whether Plaintiff is similarly situated for purposes of the first step analysis. *See Centurioni*, 2008 WL 295096, at *2. However, the elements of an FLSA off-the-clock claim may inform whether the Plaintiff and unnamed telecommuting claims processors are similarly situated for purposes of the claim. In order to prevail on a compensation claim under the FLSA, a plaintiff "must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." *Allen v. Board of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1314-15 (11th Cir. 2007); *see also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for overtime compensation.").

The Court concludes that conditional certification on Plaintiff's off-the-clock work claim is appropriate to the extent such a claim is based on Blue Shield's alleged failure pay its claims processors for travel time to and from a Blue Shield office for required meetings. To the extent that Plaintiff bases her off-the-clock work claim on Blue Shield's 125% productivity requirement, however, Plaintiff has failed to make the requisite factual showing that "similarly situated" claims processors were subject to a common plan or policy that violated the law.

a. **Certification of Plaintiff's FLSA Claim Based on Blue Shields' 125% Productivity Goals Will Be Denied**

To the extent that Plaintiff seeks to base her off-the-clock work claim on Blue Shield's 125% production goals for telecommuting claims processors, the Court concludes that she has failed to meet her burden under the first-step. While the first-step burden on Plaintiff may be low, "'the burden is not non-existent and the factual showing, even if modest, must still be based on some substance.'" *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012) (quoting

14

1   *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010));  *See also Colson v.*

2   *Avnet, Inc.*, 687 F. Supp.2d 914, 929-30 (D. Ariz. 2010) ("Although the burden for certifying a

3   FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot

4   function as a rubber stamp for any and all claims that come its way under this statute.").  Thus,

5   Plaintiff "must present more than mere allegations; i.e., some evidence to support the allegations is

6   required."  *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo.2007).  As described

7   above, the ultimate inquiry at this first-step is to determine whether individuals "similarly situated"

8   to Plaintiff actually exist and were "victims of a common policy or plan that violates the law."

9   *McGlone*, 867 F. Supp. 2d at 443; *see also Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105

10  (C.D. Cal. 2011) (noting that plaintiffs at step one must make "substantial allegations" or a "modest

11  factual showing" that they and others "were subject to a 'common policy or plan that violated the

12  law'").

13         In attempting to meet this burden, Plaintiff has stated in her declaration that she felt pressure

14  to work off the clock because of Blue Shield's 125% productivity goals for telecommuting claims

15  processors.  Richie Decl. ¶ 8.  However, the only evidence in the record that other putative class

16  members worked off the clock as a result of the pressure imposed by these productivity goals is her

17  only statement that she "frequently heard" other (unnamed) telecommuters discuss "not being able

18  to meet their production target within their 8 hour shift" and that they "often worked through lunch

19  or breaks in order to meet their production targets." *Id.* ¶ 12.  Similarly, Plaintiff points to the

20  deposition hearsay testimony of Dawn Chayan that claims processors – whether telecommuters or

21  not – complained about their production goals. Chayan Depo. at 32:11-25 (Docket No. 35-1) ("Q.

22  Okay.  Did anyone else complain about production goals besides Ronie?  A. Yes.  Q. Were they

23  mostly telecommuters or people who worked in-house?  A. Everyone.").  Finally, to the extent that

24  Plaintiff's allegations in her pleadings are relevant at this stage, *see Benedict*, 2014 WL 487135, at

25  *5, her FAC contains the following unsupported, unadorned allegation: "Also as part of her job

26  duties, PLAINTIFF would work overtime hours each day for which she was not compensated fully."

27  FAC  ¶ 13.

28

United States District Court

For the Northern District of California

1    What Plaintiff has failed to produce, however, is a single declaration or non-hearsay

2  deposition testimony of any other putative class member in which they state, like Plaintiff, that they

3  worked off the clock as a result of the production targets.  While not dispositive, such a failure

4  "undermines Plaintiff's attempts at conditional certification," particularly in light of the fact this

5  case has been proceeding for over a year.  *Ceras-Campo v. WF Ptshp.*, No. 5:10-cv-215-BO, 2011

6  WL 588417, at *3 (E.D.N.C. Feb. 9, 2011) (denying conditional certification, in part, because

7  "[d]espite the fact that this case has been pending for nearly nine months, Plaintiff has not provided

8  the Court with a single declaration from any other worker who claims he or she was not properly

9  paid").

10    In contrast to the record herein, courts have granted conditional certification where they have

11  been presented with declarations from multiple employees tending to support the existence of a

12  common plan or policy that violates the law.  For example, in *Longnecker v. American Express Co.*,

13  2:14-cv-0069-HRH, 2014 WL 4071662 (D. Ariz. Aug. 18, 2014), plaintiff supplied four declarations

14  from coworkers attesting to the fact that, notwithstanding defendant's formal policy barring off-the-

15  clock work, they were required to arrive at defendant's call center 15 minutes before the start of

16  their shift to start up their computer or they would be deemed late.  *Id.* at *1.  All four declarants

17  similarly stated that they were informed by supervisors not to list this time on their time records

18  because they would not be paid for it.  *Id.*  The court determined this was sufficient, because it

19  showed that the employees "were all subject to the same practice of not being compensated for work

20  they were required to perform prior to their scheduled shift."  *Id.* at *4; *see also Jones v. SuperMedia

21  Inc.*, 281 F.R.D. 282, 290-91 (N.D. Tex. 2012); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 65-67

22  (E.D. Pa. 2009).

23    Plaintiff's failure to provide factual evidence in support of the existence of a similarly

24  situated claims processor (deposition testimony, declarations, etc.) is particularly telling for three

25  reasons.  First, in her deposition, Plaintiff acknowledged that she did not know if any other

26  telecommuting claims processor had worked overtime hours that were not compensated:

27         Q.     Ms. Richie, do you know whether any other triage
            claims processors who telecommuted worked overtime hours that
28         weren't compensated?

**United States District Court**
For the Northern District of California

A.      I don't know.

Q.      Do you know whether any claims processors in any other non-triage area of the company worked overtime hours that weren't compensated, whether they were telecommuters or in the office?

A.      I don't know.

Richie Depo. at 148:10-18.  Thus, even if Plaintiff had, as she stated in her declaration, heard other telecommuters complain about being able to meet their productivity standards during their 8 hour shift and working through their lunch breaks, she admitted in her deposition that she had no basis for knowing whether or not those telecommuters were compensated for that time.

Second, it is undisputed that Blue Shield has an official policy of prohibiting off-the-clock work.  *See, e.g.*, Richie Depo. at 170:16-23 (Plaintiff testifying in her deposition that she signed a contract promising not to work off the clock or work through lunches).  Courts have noted that the presence of express policies prohibiting off-the-clock work, while by no means dispositive, tends to contradict the existence of a "common policy" and therefore is a factor against FLSA certification.  *See, e.g.*, *Richardson v. Wells Fargo Bank, N.A.*, No.4:11-cv-0738, 2012 WL 334038 (S.D. Tex. Feb. 2, 2012) ("Although written policies are not dispositive that an actual plan or practice exists, written policies are relevant considerations when assessing workers' arguments about the existence of a company-wide policy."); *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1189 (D. Minn. 2007) ("The existence of a written policy dictating overtime pay is one factor weighing against conditional certification.").

Finally, and more fundamentally, courts have held that "'unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden" even at the lenient first step.  *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (quoting *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)).  For example, in *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007), Plaintiff, a Senior Retail Sales Representative ("SRSR") with T-Mobile, alleged that he and other SRSRs were forced to work uncompensated overtime.  The district court denied conditional certification under the first-step inquiry, finding that the plaintiff had "presented only his own affidavit . . . as admissible

United States District Court

For the Northern District of California

1  evidence about other SRSRs working uncompensated overtime, and that evidence is somewhat

2  vague." *Id.* at *5. It noted that there was no "admissible proof from or about any specific SRSR

3  other than [plaintiff] (and his overly general statements about others) that supports his claims that

4  *SRSRs* commonly work unpaid overtime." *Id.* Similarly, in *Lallathin v. Ro Ro Inc.*, No. 1:09-cv-

5  1293-WTL-DML, 2010 WL 2640271 (S.D. Ind. June 28, 2010), plaintiff supported his motion for

6  conditional certification with a declaration in which he asserted that he had spoken to other store

7  managers employed by defendant and had "been told by [them] that they have been required to work

8  beyond 40 hours per week and have not been paid wages or otherwise compensated by Defendant

9  for these overtime hours." *Id.* at *2. The court found certification was inappropriate as plaintiff had

10 not provided "any evidentiary support" for his overtime allegations and the court could not find a

11 "single case" that had been certified based solely on hearsay statements in a declaration. *Id.*

12      In this case, it is undisputed that Blue Shield required all of its telecommuting claims

13 processors to meet a 125% productivity requirement. However, outside of her own experience,

14 Plaintiff has failed to introduce any evidence of another claims processor who failed to receive

15 compensation for off-the-clock work caused by this policy. The closest Plaintiff comes is her

16 hearsay statement that an undisclosed number of unnamed telecommuting claims processors

17 complained about having to work through their breaks because of the policy. This hearsay statement

18 – especially when combined with Plaintiff's admission during her deposition that she did not know

19 if any claims processors had worked overtime for which they were not compensated – is insufficient

20 to meet Plaintiff's burden of demonstrating that she and other similarly situated claims processors

21 worked off the clock in violation of the law. *See, e.g.*, *Shipes v. Amurcon Corp.*, No. 10-14943,

22 2012 WL 995362 (E.D. Mich. Mar. 23, 2012) (finding a "bare-bones" affidavit that stated "I know

23 of other individuals who regularly worked overtime hours for Amurcon" failed to make the required

24 modest factual showing); *Avnet, Inc.*, 687 F. Supp.2d at 928-29 (discounting declaration which

25 referenced "discussions . . . with [unidentified] co-workers" (alteration in original)). Accordingly,

26 Plaintiff's motion to conditionally certify an FLSA claim based on Blue Shield's 125% productivity

27 requirement is **DENIED**.

28

United States District Court
For the Northern District of California

b.       Conditional Certification of Plaintiff's FLSA Claim Based on Blue Shields'
Failure to Reimburse Travel Time Will Be Granted

By contrast, the Court finds that Plaintiffs has made the modest factual showing required to conditionally certify her FLSA claim based on Blue Shield's alleged failure to reimburse telecommuting claims processors for their travel time.  Plaintiff has introduced evidence that Blue Shield requires its telecommuting claims processors to attend meetings at a Blue Shield office (though the frequency of these mandatory, in-person meetings is disputed).  *See, e.g.*, Bauman Decl., Ex. D (Plaintiffs' telecommuting agreement requiring her to be "available at least once per month or as required by management, to report to a Company business location to attend meetings"); Chayan Depo. at 35:25-36:3 ("A. We do have mandatory [meetings] that we have to go into the office.  Q. How often do those occur?  A. Probably four times a year."); Satterthwaite Depo. at 48:10-15 (Blue Shield representative distinguishing between monthly meetings and quarterly meetings).  Plaintiff has further provided evidence that Blue Shield does not reimburse telecommuters for the travel time to and from these meetings – at least when "such travel takes place before clocking in and after clocking out" as Blue Shield considers this to be the telecommuters' normal commute.  Satterthwaite Decl. ¶ 3.

During the hearing, Blue Shield emphasized that Plaintiffs' "travel time" claim depends on individualized determinations and is therefore not proper for collective treatment.  Specifically, Blue Shield pointed to the fact that at some point in the past, individual supervisors began to exercise discretion as to whether to require the claims processors working for them to come in for their meetings (as opposed to attending the meetings remotely).  *See, e.g.*, Marenco Decl. ¶¶ 8-9.  Accordingly, it argues that determining whether a given telecommuter's travel time is reimbursable would require an examination of each supervisor's individual practices and each telecommuter's decision whether to attend meetings remotely or in person.  Blue Shield also points to the fact that in 2011, it retroactively reimbursed telecommuters for past mileage and travel time incurred in attending required meetings.  *See* Satterthwaite Decl. ¶ 3.  However, the record is disputed as to whether *travel time* (as opposed to only mileage expenses) was, in fact, reimbursed; there was

United States District Court

For the Northern District of California

1  testimony from telecommuters identified by Blue Shield that they were never reimbursed for travel

2  time.  *See* Chayan Depo. at 38:18-22.

3      Ultimately, arguments as to whether individualized determinations sufficiently common or

4  prevalent as to preclude collective treatment are better addressed at the second-step inquiry when a

5  full factual record can be presented.  *See, e.g.*, *Vargas v. General Nutrition Centers, Inc.*, No. 2:10-

6  cv-867, 2012 WL 3544733, at *8 (W.D. Pa. Aug. 16, 2012) ("[A] defendant's claim or defense that

7  individualized circumstances of employees render the matter unsuitable for collective treatment may

8  be more appropriately reviewed during step two of the certification process.").  Moreover, as noted

9  above, the merits of Plaintiff's travel time claim, while in dispute, is not a matter for first-step

10 inquiry.[7]

11     Because Plaintiff has shown a reasonable basis for concluding that she and similarly situated

12 claims processors were subject to a common policy of Blue Shield not reimbursing them for the time

13 spent traveling to required meetings, the Court concludes that conditional certification of this FLSA

14 claim is proper under the lenient first step.  Accordingly, Plaintiff's motion for conditional

15 certification is **GRANTED** as to this claim.

16 B.    Plaintiff's Motion to Certify State Law Claims Under Fed. R. Civ. P. 23

17     Plaintiff moves to certify her California UCL and Labor Code § 2802 claims as a class action

18 under Federal Rule of Civil Procedure 23.  In these state claims, Plaintiff argue that Blue Shield

19 failed to reimburse telecommuters for (1) mileage expenses; (2) telephone expenses[8]; and (3) "costs

20 associated with having a home office" including "a portion of her rent or mortgage utilities,

21 insurance, and depreciation."  Docket No. 27-2, at 13.  Blue Shield opposes certification, arguing

22 that Plaintiff cannot meet the Rule 23(a) requirements and cannot satisfy either Rule 23(b)(1) or

23 23(b)(3).

24

25

26   [7] Likewise, whether Plaintiff's travel time claim is legally viable in light of, for example, the
Portal-to-Portal Act, 29 U.S.C. § 254,  is not before the Court at this stage.  *Centurioni*, 2008 WL
27 295096, at *2.

28   [8] During the hearing, Plaintiff disavowed an attempt to assert a class claim based on alleged
unreimbursed internet expenses.

**United States District Court**
For the Northern District of California

Under Federal Rule of Civil Procedure 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" only if:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, a purported class must be certified under Rule 23(b) by satisfying any one of its three prongs.  Plaintiff contends that certification is appropriate either under Rule 23(b)(1) or Rule 23(b)(3).  Rule 23(b)(1) provides for certification where:

> (1)  prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A)  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B)  adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(3), by contrast, permits certification where

> (3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy

Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "While the Court retains broad discretion to certify a class, the Court must conduct a 'rigorous analysis' to confirm that the plaintiff has in fact

United States District Court

For the Northern District of California

1   established the requirements of Rule 23 to ensure that a departure from the general rule of individual

2   litigation is justified." *Preap v. Johnson*, — F.R.D. — , 2014 WL 1995064, at *14. Ultimately, the

3   party "seeking class certification bears the burden of demonstrating by a preponderance of the

4   evidence that all four requirements of Rule 23(a) . . . and at least one of the three requirements under

5   Rule 23(b) are met." *Id.* Accordingly, the court may "properly consider both the allegations of the

6   class action complaint and the supplemental evidentiary submissions of the parties" and the Court

7   must form a "reasonable judgment" on each certification requirement." *In re AutoZone, Inc., Wage*

8   *& Hour Employment Practices Litig.*, 289 F.R.D. 526, 530 (N.D. Cal. 2012).

9       A court's class certification analysis may 'entail some overlap with the merits of the

10   plaintiff's underlying claim.'" *Gold v. Midland Credit Mgmt., Inc.*, — F. Supp. 3d — , 2014 WL

11   5026270, at *2 (N.D. Cal. Oct.7, 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133

12   S. Ct. 1184, 1194 (2013)). However, "[m]erits questions may be considered to the extent – but only

13   to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class

14   certification are satisfied." *Amgen*, 133 S. Ct. at 1195.

15       1.   Plaintiffs' UCL and § 2802 Claims Do Not Include Alleged "Infrastructure" Home

16           Office Expenses

17       As detailed above, Plaintiff, in her motion for class certification, asserts that her state law

18   claims include a claim for reimbursement of the "costs associated with having a home office,

19   including a portion of her rent or mortgage, utilities, insurance, and depreciation." Docket No. 27-2,

20   at 13. The Court will refer to these alleged expenses as "infrastructure" expenses. Blue Shield

21   argues that Plaintiff's FAC fails to include these expenses in Plaintiff's § 2802 and UCL claims for

22   relief. Docket No. 31, at 17.

23       Generally, a plaintiff may only seek to certify a class as defined in a complaint – courts will

24   not certify classes different from, or broader than, a class alleged in the complaint without plaintiff

25   moving to amend the complaint. *See, e.g.*, *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal.

26   2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended

27   complaint, will not consider certification beyond it."); *see also Savanna Grp., Inc. v. Trynex, Inc.*,

28   No. 10-cv-7995, 2013 WL 66181, at *2 (N.D. Ill. Jan. 4, 2013) ("District courts typically, though

1    not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant

2    complaint.").

3        Plaintiff's FAC provides the following class definition:

4            The Collective Class consists of all persons who are current and
             former employees of DEFENDANT and who held the position of
5            Claims Processor while employed in California by DEFENDANT and
             worked overtime hours which were unpaid under FLSA, 29 USC §
6            201, *et seq.* **and incurred business expenses, office expenses (e.g.
             phone and internet expenses) and mileage** during the prior
7            commencing in the date that is within four years prior to the filing of
             this complaint and through the present date (the "Class Period"), **and
8            who were not fully reimbursed pursuant to the applicable laws.**

9    FAC ¶ 3 (emphases added).  In addition, the FAC contains the following substantive allegations

10   regarding Blue Shield's alleged failure to reimburse:

11           17.    BLUE SHIELD required PLAINTIFF, and other
             members of the CLASS, to purchase office supplies such as phone and
12           internet service, and to drive to monthly regional meetings.

13           18.    PLAINTIFF, and other members of the CLASS,
             regularly incurred mileage expenses as a result of the requirement to
14           travel, and other home office expenses.

15   FAC ¶¶ 17, 18.  Defendant argues that neither the substantive allegations nor the class definition

16   reference the infrastructure expenses that Plaintiff now purports to be seeking.

17       Plaintiff responds that these claims were properly plead.  First, she contends the phrase "and

18   other home office expenses" in Paragraph 18 of the FAC is broad enough to include things like the

19   portion of rent, utilities, and insurance expenses attributed to the home office given the liberal

20   pleading standard under Fed. R. Civ. P. 8.  Further, she argues that pre-certification discovery should

21   have put Blue Shield on notice of the scope of her claims.  Finally, she argues that any ambiguity

22   has now been cleared up by the motion for class certification.

23       The Court finds Plaintiffs' arguments unpersuasive.  The FAC is wholly silent regarding

24   infrastructure expenses associated with maintaining a home office.  The only references to "home

25   office expenses" in the FAC are items such as "office supplies" and "phone and internet services."

26   The vague reference to "other home office expenses" in the FAC is simply too amorphous to have

27   put Blue Shield on notice that Plaintiffs were seeking any additional forms of expenses beyond the

28   asserted phone and internet service claims.  *Cf. Federal Trade Comm'n v. EDebitPay, LLC*, 695

F.3d 938 (9th Cir. 2012) ("Under the principle of *ejusdem generis* . . . where specific words follow general words in a contract, the general words are construed to embrace only things similar in nature to those enumerated by the specific words." (citation and internal quotation marks omitted)). Finally, any ambiguity in the FAC was resolved at the hearing, where Plaintiff conceded that she had not contemplated seeking infrastructure-related home office expenses until certain documents were produced during discovery and Ms. Satterthwaite had been deposed – events that occurred well after the filing of the FAC.  It is thus clear that Plaintiff could not have intended such expenses to be covered in the FAC.  Even after becoming aware of this category of alleged expenses, however, Plaintiff never sought to amend her complaint to expand her allegations to include these expenses.  Now, in her reply brief in support of her class certification motion, Plaintiff requests for the first time leave to amend her complaint to expressly assert these claims.  Docket No. 35, at 14.

At this late state, with discovery having progressed substantially and a class certification motion having been filed, the Court will not permit Plaintiff to amend her complaint to include these infrastructure expenses.  Federal Rule of Civil Procedure 15 governs the amendments of pleadings and, while the rule is to be applied with "extreme liberality," amendment is not permitted as a matter of right.  *See, e.g.*, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  Rather, leave to amend will be denied if permitting the amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith.  *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  In addition, if a plaintiff's attempt to amend the complaint comes after the amendment deadline set by the Court's scheduling order, Plaintiff must meet the more rigorous "good cause" standard under Federal Rule of Civil Procedure 16.  *See, e.g.*, *Center for Biological Diversity v. McCarthy*, No. C13-5142 SBA, 2014 WL 3058321, at *2 (N.D. Cal. July 3, 2014).

Here, Plaintiff cannot meet either the Rule 15 or Rule 16 standard.  Plaintiff unduly delayed in seeking to amend her complaint.  First, the information that Plaintiff purportedly discovered during the discovery process that made her think to pursue infrastructure-related expenses – the Internal Revenue Service's various deductions for home office related expenses – are matters of public record.  Plaintiff could have – and should have – known prior to any discovery of the § 2802

**United States District Court**
For the Northern District of California

1   theory she now seeks to assert.  Further, even if it is assumed that some information that could only

2   have been obtained through discovery triggered Plaintiff to pursue these expenses, Plaintiff failed to

3   move to amend her complaint at any point prior to her filing of the class certification motion and

4   Blue Shield's opposition.  Significantly, the Satterthwaite Deposition, which Plaintiff at the hearing

5   said was critical to revealing this theory, occurred on May 14, 2014 – a month and a half before

6   Plaintiff filed her motion for class certification.

7          In addition to Plaintiff's undue delay, Blue Shield would be prejudiced by the extensive

8   delay that would be result if Plaintiff's complaint was amended at this late stage.  Inclusion of

9   infrastructure related expenses would greatly expand the scope of Plaintiff's state law causes of

10  action.  To this point, Plaintiff's state law claims have involved phone, internet, and office supply

11  expenses.  Discovery has focused on these expenses.  To now expand the case to include portions of

12  claims processors' mortgages, utilities, and related expenses would require extensive additional

13  discovery, likely result in several months of delay, and require the parties to go through another

14  round of class certification briefing.  Indeed, allowing such a material amendment would delay

15  decision on class certification by months.

16         Accordingly, in light of Plaintiff's failure to establish good cause for her untimely request as

17  well as the prejudice to Blue Shield that would result, Plaintiff's request to amend her complaint is

18  **DENIED**.  Plaintiff's state law causes of action will be limited to reimbursement for alleged mileage

19  and phone expenses.

20         2.     <u>Plaintiff Has Met the Rule 23(a) Requirements as to Her Telephone-Expense Related</u>

21                <u>Claims</u>

22         Rule 23(a) requires a purported class to satisfy four criteria for certification: numerosity,

23  commonality, typicality, and adequacy of the representatives.  Fed. R. Civ. P. 23(a).  Failure to meet

24  nay of the criteria defeats the motion.  *Rutledge v. Elect. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th

25  Cir. 1975) (citation omitted).  The burden is on the plaintiff to show that these requirements have

26  been met.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL

27  5391159, at *1 (N.D. Cal. 2013).

28

**United States District Court**
For the Northern District of California

a.      Numerosity

Rule 23(a)(1) requires that "a class be so numerous that joinder of all members is impracticable." *In Re Optical Disk Drive Antitrust Litig.*, — F.R.D. — , 2014 WL 4965655, at *3 (N.D. Cal. Oct. 3, 2014).  A specific minimum number is not necessary, and plaintiff need not state the exact number of potential class members.  *Id.*; *see also In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).  Here, Plaintiff maintains that the class consists of approximately 140 individuals.  Docket No. 27-2, at 22.  She bases this number on Ms. Satterthwaite's deposition testimony that there are 350 Claims Processors employed by Blue Shield at any given time, with approximately 40% telecommuting.  *See* Satterthwaite Depo. at 167:7-23, 25:21-26:8.  A putative class of 140 individuals would meet the numerosity requirement.  *See, e.g.*, *Marsh v. First Bank of Delaware*, No. 11-cv-05226-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ("As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement." (quoting *Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008)).

b.      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Thus,'"[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'"  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court noted that even a single common question will suffice for purposes of this requirement.  *Wal-Mart*, 131 S. Ct. at 2556.  However, the Court explained that

> "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

United States District Court
For the Northern District of California

*Id.* at 2551 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  Thus, the "common contention" raised by a putative class representative must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Notably, plaintiffs need not prove they will prevail on the merits; commonality only requires that there be common answers apt to drive resolution of the litigation; that commonality can be met even if the common answer may be decided adversely to the plaintiffs on the merits.  Finally, the *Wal-Mart* decision "clarified that '[c]ommonality requires the plaintiff to demonstrate the class members have suffered the same injury.'"  *Evon v*, 688 F.3d at 1029 (9th Cir. 2012) (quoting *Wal-Mart*, 131 S. Ct. at 2551).

"[I]n all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims."  *Parsons*, 754 F.3d at 676.  "To assess whether the putative class members share a common question, the answer to which 'will resolve an issue that is central to the validity of each one of the [class members's] claims,' we must identify the elements of the class members's case-in-chief."  *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014).

Here, Plaintiff's state law claims revolve around an alleged violation of California Labor Code § 2802.[9]  This provision provides, in relevant part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."  Cal. Labor Code § 2802(a).  The elements of this claim are: (1) the employee made an expenditure or incur a loss; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties and (3) the expenditures or losses were necessary.  *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006).  Plaintiff contends that two categories of expenses were not reimbursed by Blue Shield: (1) mileage expenses and (2) telephone expenses.  Plaintiff asserts that the "common nucleus of operative facts here is whether or not Blue Shield's policies properly reimbursed telecommuting

[9] Plaintiff has also asserted a claim under California's Unfair Competition Law, but this claim is, in turn, primarily predicated on the alleged violation of Cal. Labor Code § 2802.  *See* FAC ¶ 35.

United States District Court

For the Northern District of California

1  Claims Processors for all the expenses related to working from home."  Docket No. 27-2, at 24; *see*

2  *also* Docket No. 35, at 10 ("[B]ecause Ms. Richie and putative class members were all subject to the

3  same unlawful reimbursement policies, they suffered the same harm.").  Unhelpfully, Plaintiff does

4  not attempt to identify specific common questions, but instead relies on this broad articulation.

5                                i.      Mileage Expenses

6          As to the alleged mileage expenses, Plaintiff has demonstrated the existence of a common

7  question of law.  The record reveals that Blue Shield's policy is to not reimburse travel time to and

8  from work that is done prior to clocking in or after clocking out as such travel is deemed to be the

9  worker's normal commute.  Satterthwaite Decl. ¶ 3; *see also* Bauman Decl., Ex. B.  Beginning in

10  2011, Blue Shield began prohibiting telecommuters from traveling to or from home during the

11  workday (after clocking in or before clocking out) and reimbursed telecommuters for any mileage or

12  travel expenses they incurred during the work day over the previous three years.  Satterthwaite Decl.

13  ¶ 3.  Despite Blue Shield's current policy, a common question of law exists, namely, whether

14  mileage expenses incurred by a telecommuting claims processor in driving to a mandatory meeting

15  before clocking in or after clocking out is properly reimbursable under § 2802.  *See Trosper v.*

16  *Styker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *9 (N.D. Cal. Aug. 21, 2014) ("This

17  Court and others in this Circuit have found that commonality is met when, as here, the proposed

18  class asserts that an employer adopted a policy of not reimbursing its employees' necessary business

19  expenses in violation of Section 2802."); *see also Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

20  443, 449 (E.D. Cal. 2013) (finding the commonality requirement met as, among other things, there

21  was a common legal question of "whether Defendant's policy to exclude 'normal commuting miles'

22  from reimbursable miles violated section 2802 of the Labor Code when employees were asked to

23  pick up and drop off products for other stores before or after work").  An answer to that legal

24  question is common to the class and is apt to drive the resolution of that claim.

25                                ii.      Telephone Expenses

26          Further, the Court finds that a common question exists as to Plaintiff's telephone-related

27  expense claim under § 2802.  The record reveals that Blue Shield has a uniform policy of

28  reimbursing work-related telephone expenses incurred by telecommuting claims processors.  For

United States District Court

For the Northern District of California

1  example, the telecommuting agreement signed by Plaintiff in 2011 stated that "[a]ny charges

2  incurred by the employee for work-related telephone calls . . . will be reimbursed by the Company."

3  Bauman Decl. Ex. D.  Additionally, in her deposition, Ms. Satterthwaite testified that claims

4  processors were reimbursed for "telephone charges" if they were "required to do their position" or

5  "job related."  Satterthwaite Depo. at 42:11-15.  Based on this evidence, Blue Shield appears to have

6  a uniform reimbursement policy with regards to work-related telephone expenses.

7       Blue Shield has not offered any evidence or otherwise contended that this policy was applied

8  in an inconsistent manner.  Quite the opposite – Blue Shield's briefing appears to emphasize the

9  express, uniform nature of this reimbursement policy.  *See* Docket No. 31, at 19 ("Blue Shield's

10  express policy was to reimburse telecommuters for phone charges.").  Blue Shield required

11  telecommuting claims processors to be available by phone during regular business hours.  *See, e.g.*,

12  Bauman Decl., Ex. D ("The employee agrees to be available by telephone . . . during the agreed

13  upon business hours."); Treglio Decl., Ex. 3, at 5 ("In order to be eligible for telework, Blue Shield

14  employees must: . . . [h]ave current telephone lines that are in the Employee or spouse's name."), at

15  *Id.*, Ex. 4, at 2 ("Telecommuters will be accessible via phone . . . during the agreed upon regular

16  business hours regardless of work location.  Department Management must be informed of

17  appropriate phone numbers to contact employees while telecommuting.").  This has always been the

18  policy for telecommuters at Blue Shield." (citation and footnote omitted)).  Accordingly, to the

19  extent there may be questions as to the precise conditions under which telecommuters were entitled

20  to reimbursement for phone-related expenses, that would appear to be a common question of fact

21  applicable to the entire class.

22       There is also a common question of law – whether Blue Shield policy as interpreted is

23  consistent with California law.  In *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137

24  (2014), the California Court of Appeal confronted a situation where an employer required its

25  employees to use their personal cell phones for work-related calls.  The court held that the employer

26  was required to "reimburse an employee for the reasonable expense of the mandatory use of a

27  personal cell phone," even when the employee did not incur an "extra expense" as a result of that

28

1  call (for example, when the employee had an "unlimited minutes" plan). *Id.* at 1144.  The court

2  reasoned:

> 3  The answer is that reimbursement is always required.  Otherwise, the employer would receive a windfall because it would be passing its
> 4  operating expenses onto the employee.  Thus, to be in compliance with section 2802, the employer must pay some reasonable percentage of
> 5  the employee's cell phone bill.  Because of the differences in cell phone plans and worked-related scenarios, the calculation of
> 6  reimbursement must be left to the trial court and parties in each particular case.

7

8  *Id.*

9       Whether Blue Shield's reimbursement policy complies with the "reasonable percentage"

10  requirement articulated in *Cochran* and whether, *e.g.*, this requirement applies to an employee who

11  voluntarily chooses to telecommute are questions common to the class.  Accordingly, there are both

12  questions of fact (what, precisely, Blue Shield's reimbursement policy covered or did not cover) and

13  questions of law (whether that policy complies with California law) common to the class and subject

14  to class-wide proof.

15                    iii.    Office Related Expenses

16       However, to the extent that Plaintiff seeks to assert a § 2802 claim on behalf of a class based

17  on Blue Shield's failure to reimburse for office supply-related expenses, she has failed to

18  demonstrate the existence of a common question of law or fact.  In her deposition, Plaintiff stated

19  that while Blue Shield originally provided a number of supplies (highlighters, post-it notes, and the

20  like), she began to have to pay for them out of her own pocket because the supply room at the local

21  Blue Shield office no longer stocked the supplies.  Bauman Decl., Ex. E, at 90:9-91:6.  However, she

22  further stated she never asked anyone at work whether the supplies could be obtained from a

23  different location and could not recall whether she ever requested the items from Blue Shield.  *Id.* at

24  93:3-20.  By contrast, the record suggests that Blue Shield's policy was that it would "provide office

25  supplies as needed when requisitioned by the Associate in the normal departmental manner."

26  Treglio Decl. Ex. 2, at 2.  Plaintiff's own experience with her local office's supply room, and her

27  failure to demonstrate what Blue Shield's practice was when presented with more diligent efforts to

28  obtain supplies or seek reimbursement, fails to establish a pattern, practice or policy sufficient to

United States District Court

For the Northern District of California

1   demonstrate the existence of a common question of law or fact as to whether Blue Shield failed to

2   reimburse its claim processors for expenses incurred in acquiring necessary office supplies in

3   violation of the Labor Code.  Nothing in the record suggests her experience in this regard was

4   widely shared by other employees.

5           c.     Typicality and Adequacy of Representative

6           Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of

7   the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit has stated that this

8   is a "permissive standard" under which "'representative claims are 'typical' if they are reasonably

9   coextensive with those of absent class members; they need not be substantially identical.'"  *Parsons*,

10  754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020).  "'The test of typicality is whether other

11  members have the same or similar injury, whether the action is based on conduct which is not unique

12  to the named plaintiffs, and whether other class members have been injured by the same course of

13  conduct.'"  *Evon*, 688 F.3d at 1030 (quoting *Hanon v. Dataproducts Corp.*, 876 F.2d 497, 508 (9th

14  Cir. 1992)).  Accordingly, the Court "should consider whether the named plaintiffs' 'individual

15  circumstances are markedly different or . . . the legal theory upon which the claims are based differs

16  from that upon which the claims of other class members will perforce be based.'"  *In re Optical Disk

17  Drive Antitrust Litig.*, — F.R.D. — , 2014 WL 49465655, at *4 (N.D. Cal. Oct. 3, 2014) (quoting *In

18  re Bulk [Extruded] Graphite Prod. Antitrust Litig.*, No. Civ. 02-6030 (WHW), 2006 WL 891362, at

19  *5 (D.N.J. Apr. 4, 2006)).

20          Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the

21  interests of the class.  Fed. R. Civ. P. 23(a)(4).  "In making this determination, courts must consider

22  two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other

23  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

24  behalf of the class.'"  *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020).  Further, to

25  satisfy the adequacy-of-representation requirement, "the class representative must possess at least a

26  minimal degree of knowledge regarding the class action."  *Stuart v. RadioShack Corp.*, No. C-07-

27  4499 EMC, 2009 WL 281941 (N.D. Cal. Feb. 5, 2009) (quoting Moore's Federal Practice  §

28  23.25[1][c][ii]).  Often the Rule 23(a)(3) typicality and Rule 23(a)(4) adequacy of representation

United States District Court

For the Northern District of California

1   analyses will overlap.  *See, e.g.*, *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No.

2   2:13-cv-02468-CAS(MANx), 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ("The typicality

3   requirement tends to overlap with the commonality and adequacy requirements.").

4          Plaintiff fails to satisfy either the typicality or adequacy requirements regarding as to her

5   claim for mileage reimbursement.  The Ninth Circuit has made clear that class certification should

6   not be granted if "'there is a danger that absent class members will suffer if their representative is

7   preoccupied with defenses unique to it.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th

8   Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).  Further, while a named representative need not have

9   legal knowledge or understand the precise legal theories advanced by counsel, she must nonetheless

10  have a general understanding of the claims asserted.  *See, e.g.*, *Californians for Disability Rights,*

11  *Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) ("The threshold of

12  knowledge required to qualify a class representative is low; a party must be familiar with the basic

13  elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the

14  case." (citation omitted)); *Jenkins v. Macatawa Bank Corp.*, No. 1:03-CV-321, 2006 WL 3253305,

15  at *7 (W.D. Mich. Nov. 9, 2006) ("A class representative does not need to understand the legal

16  details of the claim being asserted, but in order to fairly and adequately represent the class, a class

17  representative must be able to articulate, in a general sense, what wrong is alleged to have been

18  committed by the Defendants.").

19                          i.      Mileage Reimbursement

20          Regarding the mileage reimbursement claim, Plaintiff, during her deposition, testified as

21  follows:

22              Q.      Are you – are you claiming that you were entitled to
                reimbursement for mileage?

23              A.      No.

24

25  Richie Depo. at 159:17-19.  Plaintiff did not seek to explain this statement or expressly reassert her

26  intention to seek reimbursement for mileage expenses in her subsequent declaration.  Rather, she

27  merely restates that she had not been reimbursed for her mileage expenses.  Richie Decl. ¶¶ 11, 13.

28  Further, despite Blue Shield raising this issue in their opposition to class certification, Plaintiff failed

United States District Court
For the Northern District of California

1   to address it in her reply brief.  Ultimately, Plaintiff's deposition statement directly contradicts the

2   FAC which asserts a § 2802 claim for unreimbursed mileage expenses.  *See* FAC ¶ 18.  It thus

3   appears that Plaintiff has effectively disavowed any intent to pursue a claim for mileage

4   reimbursement.  Whether or not this statement ultimately proves legally binding, the Court envisions

5   subsequent motion practice and resources being spent on this issue that is individual to Plaintiff.

6   Further, the Court has serious reservations about permitting a class to be represented by an

7   individual who cannot articulate the basic harm on which she has filed suit to recover.  Plaintiff was

8   not asked about minute details of her claim or the legal theory underlying it – rather, she was asked a

9   basic question and she answered it in a way that suggests she does not understand the scope of this

10  action filed on her behalf.  *See, e.g.*, *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 568 (D. Minn. 2003)

11  (denying class certification under Rule 23(a)(4) where the class representative was "confused about

12  the action and [was] unfamiliar with his own complaint, his claims and the parties involved").

13                          ii.        Telephone Expenses

14          As to Plaintiff's telephone-expense claims, however, the Court finds that Plaintiff's claims

15  are typical of the proposed class.  Blue Shield's argument against the typicality of Plaintiff's claims

16  involve the fact that Plaintiff never requested reimbursement for telephone related expenses.  In her

17  declaration, Plaintiff asserts:

18                  8.      In addition to the Internet connection, I was also
                required to have telephone service in order to telecommute.  On
19              average, as a telecommuter Claims Processor, I would need to call a
                Blue Shield office twice a month to participate in meetings, to request
20              technical support, or to follow up on a claim.  As I already had home
                telephone service, I did not incur any installation expenses.  ***However,***
21              ***I was never told that Blue Shield would cover my telephone***
                ***expenses.  As such, I never submitted them for reimbursement.***
22

23  Richie Decl.  ¶ 8 (emphasis added).  Blue Shield contends that Plaintiff's claims are not typical

24  based on her failure to request reimbursement.  The Court disagrees.

25          Plaintiff's failure to request reimbursement would undermine a finding of typicality if

26  California law required a request for reimbursement before an employer's duty to reimburse would

27  arise.  However, in *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009), this Court

28  refused to hold that an employer's duty to reimburse its employees turned on whether an employee

United States District Court

For the Northern District of California

made a request for reimbursement. *Id.* at 905. Rather, the Court interpreted § 2802 as focusing on whether the employer either "knows or has reason to know that the employee has incurred a reimbursable expense." *Id.* at 903. Where an employer has this knowledge, "it must exercise due diligence to ensure that each employee is reimbursed." *Id.*; *see also Tokoshima v. Pep Boys Manny Moe & Jack of Cal.*, No. C12-4810-CRB, 2014 WL 16779779, at *8 (N.D. Cal. Apr. 28, 2014) (same); *Marr v. Bank of America*, No. C09-05978 WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) (same). As discussed above, it is undisputed that Blue Shield required its telecommuting claims processors to maintain a phone line as a requirement for telecommuting. Accordingly, Blue Shield had "reason to know" that its telecommuting claims processors were incurring an expense within the meaning of *Cochran*. Accordingly, based on the *Cochran* court's interpretation of § 2802, Blue Shield had the duty to exercise "due diligence" and ensure that reimbursement was made. Accordingly, at this stage Plaintiff's failure to request reimbursement does not clearly create an individualized defense as to Plaintiff. Finally, unlike with the mileage claim, there is no indication that Plaintiff does not understand or has otherwise disclaimed an intent to pursue reimbursement for telephone charges.

> ### d.   Conclusion

For the foregoing reasons, the Court concludes that Plaintiff has met the Rule 23(a) requirements only as to her state law claims based on Blue Shield's alleged failure to reimburse telephone-related expenses.

> ### 3.   Whether Plaintiff Has Met One of Rule 23(b)'s Prongs

Plaintiff asserts that class certification is appropriate under either Rule 23(b)(1) or Rule 23(b)(3).

> #### a.   Certification Is Improper Under Rule 23(b)(1)

Rule 23(b)(1)(A) permits certification where actions by individual class members would create the risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Courts have routinely refused to certify classes under this provision where the Plaintiff seeks primarily money damages. *See, e.g.*, *Evans v. Linden Research Inc.*, No. C11-01078

United States District Court

For the Northern District of California

1    DMW 2012 WL 5877579, at *15 (N.D. Cal. Nov. 20, 2012); *see also Zinser v. Accufix Research*

2    *Institute*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Certification under Rule 23(b)(1)(A) is therefore not

3    appropriate in an action for damages.").  Plaintiffs FAC seeks primarily damages – namely

4    unreimbursed mileage, telephone/internet, and home office expenses.  In fact, the second count for

5    relief (the Cal. Labor Code § 2802 claim) does not even seek injunctive relief, but rather

6    compensatory, general, and statutory damages.  Accordingly, certification under Rule 23(b)(1)(A) is

7    inappropriate.

8           Rule 23(b)(1)(B) permits certification where adjudication of individual class members'

9    claims would, as a practical matter, "be dispositive of the interests of the other members not parties

10   to the individual adjudication or would substantially impair or impede their ability to protect their

11   interests." Fed. R. Civ. P. 23(b)(1)(B).  "A classic example of a Rule 23(b)(1)(B) action is one

12   which charges 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the

13   members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the

14   subject of the trust.'" *Castro Valley Union 76, Inc. v. Vapor Systems Techs., Inc.*, No. C11-0299

15   PJH, 2012 WL 5199458, at *6 (N.D. Cal. Oct. 22, 2012).  Similarly, Rule 23(b)(1)(B) is often

16   applied in "limited fund" cases where the "plaintiff has established that the defendant may be liable

17   for more money than it has available." *Id.*  Some courts have gone so far as to state that Rule

18   23(b)(1)(B) is "inappropriate in actions seeking primarily monetary damages, with the exception of

19   limited fund cases." *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-0562-JHM, 2012 WL 3274973, at

20   *11 (W.D.Ky. Aug. 10, 2012); *see also Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 WL 2265100

21   (E.D. La. Aug. 3, 2007) ("Because plaintiffs have not identified, and the Court does not find, any

22   such limited resource that is affected by plaintiffs' lawsuit, certification under Rule 23(b)(1)(B) is

23   improper.").

24          Rule 23(b)(1)(B) does not apply to this action insofar as there is no contention that Blue

25   Shield would be unable to satisfy any judgments that would result from individual class members

26   bringing their own suits.  Further, Plaintiff has not explained how a judgment in any individual

27   action would be dispositive of, or otherwise impair or impede the ability of any other individual to

28   protect his or her interests.

**United States District Court**
For the Northern District of California

b.      <u>Common Questions of Law and Fact Predominate Over Individual Questions</u>

Rule 23(b)(3) permits certification where the court determines that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "'[T]he predominance requirement is far more demanding' than the commonality requirement of Rule 23(a)." *Bowerman v. Field Asset Servs., Inc.*, No. 13-cv-0057-WHO, 2014 WL 4676611, at *9 (N.D. Cal. Sept. 17, 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).  The Ninth Circuit has noted that "damages determinations are individual in nearly all wage-and-hour class actions."  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).  Recognizing that the Supreme Court in *Dukes* that "individualized monetary claims belong in Rule 23(b)," the Court noted that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Id.* (quoting *Dukes*, 131 S. Ct. at 2558); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) ("'[N]o matter how individualized the issue of damages may be,' determination of damages 'may be reserved for individual treatment with the question of liability tried as a class action.'").

As discussed above, to prevail for on their § 2802 claim, each class member would be required to demonstrate that  (1) he made an expenditure or incur a loss; (2) the expenditures or losses were incurred in direct consequence of his discharge of his or her duties and (3) the expenditures or losses were necessary. *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (2006).  Defendant argues these involve inherently individualized inquiries as this proof would not be entitled to classwide proof.  Docket No. 31, at 26.  As Plaintiff's state law reimbursement claim has been narrowed to include only telephone-related expenses, the Court disagrees.

A number of factual and legal issues in this case are subject to common proof.  First, the overarching question of whether claims processors who voluntarily chose to telecommute are even eligible for reimbursement of telecommuting-related expenses under § 2802 is a question of law applicable to the entire class equally. *See Novak v. Boeing Company*, NO. SACV 09-01011-

United States District Court

For the Northern District of California

1   CJC(ANx), 2011 WL 9160940, at *3 (C.D. Cal. July 20, 2011) ("As a matter of law, additional

2   internet and phone expenses incurred by Boeing's virtual workers who have elected to participate in

3   a voluntary program permitting them to work from home are not 'necessary expenditures or losses

4   incurred by the employee in direct consequence of the discharge of his or her duties.'").  Second, to

5   the extent the claims processors are entitled to reimbursement notwithstanding the voluntary nature

6   of their telecommuting, it is undisputed that Blue Shield requires the claims processor to maintain a

7   phone.  This seemingly establishes on a class-wide basis the "direct consequence of his discharge of

8   his duties" requirement as well as demonstrating that Blue Shield had a "reason to know" its claims

9   processors were incurring phone-related charges.  Third, the question of whether Blue Shield acted

10  with "due diligence" to ensure that its claims processors were reimbursed for their phone expenses

11  consistent with the California Court of Appeal's decision in *Cochran* will likely be subject to

12  common proof.

13          Of course, there are also individual questions presented by Plaintiff's telephone-expense

14  related claim.  For example, whether the amount spent by a claims processor is "necessary" could

15  require an individual determination to set the "reasonable percentage" to which a class member is

16  entitled.  *Cf. Cochran*, 228 Cal. App. 4th at 1145 ("To show liability under section 2802, an

17  employee need only show that he or she was required to use a personal cell phone to make work-

18  related calls, and he or she was not reimbursed.  Damages, of course, raise issues that are more

19  complicated."); *see also Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 562 (2007) ("In

20  calculating the reimbursement amount due under section 2802, the employer may consider not only

21  the actual expenses that the employee incurred, but also whether each of those expenses was

22  'necessary,' which in turn depends on the reasonableness of the employee's choices.").  Further, to

23  the extent that Blue Shield's policies are proven to be consistent with *Cochran* and Blue Shield

24  exercised due diligence in ensuring that its claims processors were reimbursed, individual issues

25  may arise in determining why specific claims processors did not ultimately obtain reimbursement.

26  However, the need for individualized damages assessments will not defeat predominance.  *See, e.g.*,

27  *Gaudin v. Saxon Mortgage Servs., Inc.*, 297 F.R.D. 417 (N.D. Cal. 2013) ("'Courts in every circuit

28  have . . . uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to

United States District Court

For the Northern District of California

1   make individualized damage determinations.'" (quoting 2 Newberg on Class Actions § 4:54 (5th

2   ed.)).

3          As detailed above, a number of fundamental legal and factual questions bearing on Blue

4   Shield's liability are subject to common proof.  These factual and legal questions underlying liability

5   (such as, for example, whether an employee who voluntarily chooses to telecommute is entitled to

6   reimbursement under § 2802 for the attendant expenses that go along with that choice) are likely to

7   dominate any challenge to Blue Shield's reimbursement practices.  Accordingly, classwide treatment

8   of these claims is a more efficient use of judicial and party resources than several individual actions.

9   *See, e.g.*, *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d

10  1159, 1183-84 (11th Cir. 2010) (noting that the Rule 23(b)(3) superiority analysis focuses on the

11  "relative advantages of a class action suit over whatever other forms of litigation might be

12  realistically available to plaintiffs").  Further, the individualized damage determinations at issue here

13  focus primarily on the "necessity" of the amount of any given expense incurred by a class member.

14  As just discussed, such questions are present in almost every § 2802 action and have been found to

15  not defeat class certification.  *See Leyva v. Medline Indus., Inc.*, 716 F.3d at 513.  Accordingly,

16  insofar as Blue Shield's liability can be established through common proof, the Court concludes that

17  common questions predominate over the relatively routine individualized damage determinations

18  that may be necessary.  Further, should the individual damage questions prove more complicated

19  than anticipated, this Court would maintain the option of decertifying the class after any liability

20  determination and "providing notice to class members concerning how they may proceed to prove

21  damages." *Carnegie v. Household Int'l, Inc.*, 375 F.3d 656, 661 (7th Cir. 2004).

22                          **IV.   CONCLUSION**

23         For the foregoing reasons, Plaintiff's motion for certification is **GRANTED** in part and

24  **DENIED** in part.

25         Plaintiff's motion for conditional certification under the FLSA is granted to the extent it is

26  based on Blue Shield's alleged failure to compensate telecommuting claims processors for the time

27  spent traveling to and from mandatory meetings.  Plaintiff's motion for class certification of her

28  California Labor Code § 2802 and UCL claim under Federal Rule of Civil Procedure 23 is granted

to the extent it is based on Blue Shield's alleged failure to reimburse telecommuting claims

processors for telephone-related expenses.  Plaintiff's motion is denied in all other respects.

The parties are ordered to meet and confer regarding the form and substance of the class

notices in this action, consistent with this order.  The parties shall file a stipulated class notice with

the Court by **January 5, 2015**.

This order disposes of Docket No. 27.


IT IS SO ORDERED.


Dated:  December 9, 2014

_____
EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California